UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERMAIN BOYKIN,

                        Plaintiff,

v.

SGT. LUIS MORENO, *et al.*,

                        Defendants.

No. 17-CV-6869 (KMK)

OPINION & ORDER

Appearances:

Jermain Boykin
Goshen, NY
*Pro Se Plaintiff*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant City of Newburgh*

Kellie E. Lagitch, Esq.
Office of the Orange County Attorney
Goshen, NY
*Counsel for Defendants Sgt. Luis Moreno & Sgt. Michael Torres*

KENNETH M. KARAS, United States District Judge:

      Jermain Boykin ("Plaintiff"), currently incarcerated at Clinton Correctional Facility, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Orange County, Sgt. Luis Moreno ("Moreno"), Sgt. Michael Torres ("Torres", and together with Orange County and Moreno, "County Defendants"), the City of Newburgh ("Newburgh"), and James Beckwith ("Beckwith"). Plaintiff alleges that County Defendants and Newburgh violated his rights by failing to protect him from Beckwith while he was incarcerated in Orange County Jail. (*See* Second Am. Compl. ("SAC") (Dkt. No. 65).) Before the Court are Motions To Dismiss filed by County Defendants, (Not. of Mot. (Dkt. No. 51)), and Newburgh, (Not. of Mot. (Dkt. No. 73)).

For the following reasons, the Motions are granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint and are taken as true for the purpose of resolving the instant Motions.

On February 3, 2017, while in Newburgh at approximately 11:30 a.m., Plaintiff was shot in the upper back by Beckwith. (*See* SAC 3.)[1] Beckwith fled in a vehicle. (*Id.*) The police pursued Beckwith and quickly arrested him, later charging him with first-degree assault and transporting him to Orange County Jail. (*Id.*) When Beckwith was arrested, "the arresting officer" (who is not named) knew that Plaintiff "was a victim." (*Id.*) Plaintiff alleges that "there should [] have been a[n] order of protection" and that "Newburgh [failed] to protect me." (*Id.*) A warrant was thereafter issued for Plaintiff's arrest, and on March 19, 2017, Plaintiff was arrested and transported to Orange County Jail. (*Id.* at 5.)[2] Once he arrived at intake, Plaintiff "told the officer working that night" — the officer is not named — "that the man who shot me is here." (*Id.*) The officer told Plaintiff not to worry and that "safety wasn't an issue." (*Id.*) Sometime later, Plaintiff went to the jail's "medical waiting area." (*Id.*)[3] There, he saw Beckwith, causing Plaintiff, who was "not . . . on the proper medication," to "go into extreme

---

[1] Plaintiff's filings do not use consistent page numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each page.

[2] According to Plaintiff's declaration filed in opposition to County Defendants' Motion, the warrant was issued on March 13, 2017. (*See* Decl. in Opp'n To Mot. ("Pl.'s Decl.") 2 (Dkt. No. 58).)

[3] According to Plaintiff's memorandum filed in opposition to County Defendants' Motion, Plaintiff went to the medical area on March 21, 2017, two days after arriving at Orange County Jail. (Pl.'s Resp. in Opp'n to Mot. ("Pl.'s Opp'n to County Defs.") 1 (Dkt. No. 59).)

2

defense mode." (*Id.*)[4] Plaintiff and Beckwith got in a fight. (*Id.*) Plaintiff alleges that fight was "a result of security negligence by the Orange County Jail administration." (*Id.*)

B. Procedural Background

Plaintiff filed his initial Complaint on September 7, 2017. (Dkt. No. 2.) The Court granted Plaintiff's request to proceed in forma pauperis on September 11, 2017. (Dkt. No. 4.) On September 27, 2017, the Court issued an Order replacing Orange County Jail and Newburgh Police Department with Defendants Orange County and City of Newburgh, respectively. (Dkt. No. 6.) The Court also directed that Orange County provide the identities of the John Doe Defendants to Plaintiff. (*Id.*) Orange County did so, identifying the individuals as Defendants Torres and Moreno, (Dkt. No. 24), and Plaintiff filed an Amended Complaint on December 7, 2017 naming those individuals, (Dkt. No. 28).

On November 27, 2017, Defendant Newburgh filed an initial motion to dismiss and accompanying papers. (Dkt. Nos. 19–23.) On December 22, 2017, Plaintiff filed his opposition, (Dkt. No. 30), and on January 4, 2018, Newburgh filed a reply, (Dkt. No. 32). On June 6, 2018, the Court issued an Opinion & Order (the "Opinion") granting Newburgh's motion and dismissing the Amended Complaint as to Newburgh without prejudice.

On June 21, 2018, Plaintiff filed the instant Second Amended Complaint. (SAC (Dkt. No. 65).)

Prior to the filing of the Second Amended Complaint, County Defendants had filed the instant Motion To Dismiss and accompanying papers, (Not. of Mot. (Dkt. No. 51); Decl. of Kellie E. Lagitch, Esq. in Supp. of Mot. (Dkt. No. 52); Mem. of Law in Supp. of Mot. ("County

---

[4] According to his declaration, Plaintiff "went into a (temporary shock) mo[de]" upon seeing Beckwith "and all [he] can recall is officer[s] br[e]aking up the fight." (Pl.'s Decl. 2.)

3

Defs.' Mem.") (Dkt. No. 53)), and Plaintiff had filed his response, (Pl.'s Opp'n to County Defs.; Pl.'s Decl.). On August 21, 2018, the Court filed an Order directing the County not to file further papers if it believes that the allegations against it in the Second Amended Complaint are identical to those raised in the Amended Complaint. (Dkt. No. 89.)

On July 13, 2018, Newburgh filed the instant Motion To Dismiss and accompanying papers. (Not. of Mot. (Dkt. No. 73); Decl. of David L. Posner, Esq. in Supp. of Mot. (Dkt. No. 75); Mem. of Law in Supp. of Mot. ("Newburgh Mem.") (Dkt. No. 76).) On July 31, 2018, Plaintiff filed his response. (Pl.'s Resp. in Opp'n to Mot. ("Pl.'s Opp'n to Newburgh") (Dkt. No. 82).) On August 3, 2018, Newburgh filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Newburgh Reply") (Dkt. No. 85).)[5]

## II. Discussion

County Defendants and Newburgh argue that the Second Amended Complaint fails to allege the personal involvement of any Defendant in any alleged constitutional violation, that Plaintiff fails to state a *Monell* claim against any Defendant, that Plaintiff fails to state a failure-to-protect claim, and that the Court should decline to exercise supplemental jurisdiction over any state-law claims possibly alleged.[6] (*See* County Defs.' Mem. 4–9; Newburgh Mem. 3–5.) The Court addresses each argument separately.

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

---

[5] Beckwith, who was served on October 27, 2017, (*see* Dkt. No. 15), has not filed an answer or other responsive pleading in this Action.

[6] County Defendants also argue that Plaintiff's claim for compensatory damages is barred by the Prison Litigation Reform Act. (*See* County Defs.' Mem. 9–10.) The Court need not address this argument.

4

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

5

of a complaint we accept as true all factual allegations . . . ." (citation and quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation, italics, and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (citation and italics omitted).

B. Analysis

1. Personal Involvement

County Defendants argue that the Second Amended Complaint fails to allege that any Defendant was personally involved in a constitutional violation. (*See* County Defs.' Mem. 4.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citation omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, a plaintiff must plausibly allege that a defendant's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, as County Defendants correctly point out, (*see* County Defs.' Mem. 4–5), although Plaintiff names Torres and Moreno in the caption of his Second Amended Complaint, (*see* SAC 1), he fails to name Torres or Moreno anywhere in the body of the Second Amended Complaint or otherwise connect them to the substantive allegations of raised therein, (*see id.* at 3–6). *See*

7

*King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not shown where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint"). Further, Plaintiff does not allege that he spoke to Torres or Moreno at any point to advise them of his history with Beckwith; rather, he states only that he "told the officer [who] was working" the night Plaintiff arrived at Orange County Jail — the officer is unnamed — "that the man who shot me is here," and that the officer told him not to worry and that "safety wasn't an issue." (SAC 5.) Nor does Plaintiff allege that Torres or Moreno was present at the scene of the fight in the medical waiting area. (*Id.*) Plaintiff thus fails to allege facts plausibly indicating that Torres or Moreno participated directly or indirectly in the alleged failure to protect him, that they established a policy or custom that caused the alleged deprivation, that they exhibited gross negligence in allowing the alleged deprivation to occur, that they failed to remedy the situation after the alleged deprivation occurred, or that they were informed of Plaintiff's situation and deliberately ignored it. *See Gantt v. Ferrara*, No. 15-CV-7661, 2018 WL 4636991, at *6 (S.D.N.Y. Sept. 27, 2018) (holding personal involvement not established where the plaintiff "made no factual connection between [the defendant's] training and supervision and the alleged assault"); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding personal involvement not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation (citation omitted)); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding personal involvement not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted" the violation). Moreover, to the extent Plaintiff seeks to

hold Torres and Moreno liable because they are alleged to hold positions of authority as sergeants at Orange County Jail, (*see* Pl.'s Opp'n to County Defs. 5), mere "linkage in the prison chain of command" does not suffice to establish personal involvement. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Accordingly, Plaintiff fails to allege the personal involvement of Torres or Moreno in the alleged unconstitutional deprivation.

### 2. *Monell* Liability

Plaintiff names as Defendants two municipalities — Orange County and Newburgh — and two individuals — Torres and Moreno. (*See* SAC 1.) Plaintiff does not indicate whether he sues Torres and Moreno in their individual or official capacities. In such instances, courts often construe such claims as brought in both capacities. *See Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified . . . the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."); *Jackson v. Ramirez*, No. 15-CV-617, 2016 WL 796854, at *5 (S.D.N.Y. Feb. 22, 2016) (construing complaint "as being brought against the state defendants in both their individual and official capacities" in light of *Frank*), *aff'd*, 691 F. App'x 45 (2d Cir. 2017).

"A claim asserted against a [defendant] in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional

tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

The Court previously determined that Plaintiff's Amended Complaint failed to include "*any* factual allegations" to what municipal policy, custom, or practice caused his alleged constitutional deprivation, and thus failed to satisfy the fifth element required to state a *Monell* claim. (Opinion 7–8.) Plaintiff's Second Amended Complaint, which is nearly identical to the Amended Complaint, fares no better.

Plaintiff alleges that Newburgh failed "to protect [him]" and failed "to do [their] job" by not issuing an "order of protection" after Beckwith shot Plaintiff. (SAC 3.) He further alleges that the (unnamed) officer who arrested Beckwith was "overwhelmed" and failed "to protec[t] [Plaintiff] under the law." (*Id.* at 4.) Yet, Plaintiff neither cites to nor describes any Newburgh policy, custom, or practice relating to orders of protection, nor does Plaintiff allege that any individual Defendant had policymaking authority and took action, or failed to take action, pursuant to that authority. Accordingly, the conclusory allegations in the Second Amended Complaint are insufficient to sustain a claim for relief under *Monell*. *See 5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy — unspoken or otherwise — that violates the Federal Constitution").

Further, as noted previously, (*see* Opinion 8), even assuming Newburgh had an obligation to issue an "order of protection" with regard to Plaintiff's safety, and failed in that obligation, a "single act," as alleged here, is insufficient to establish § 1983 liability. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation, alteration, and quotation marks omitted)); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citation omitted)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to

11

establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation." (citation omitted)). Accordingly, Plaintiff fails to state a *Monell* claim against Newburgh.

Plaintiff also alleges that, when he was arrested and taken to Orange County Jail on about March 19, 2017, he "told the officer working that night" — the officer is not named — "that the man who shot me is here," and that the officer told Plaintiff not to worry and that "safety wasn't an issue." (SAC 5.) Notwithstanding this assurance, Plaintiff thereafter saw Beckwith on or about March 21, 2017, "causing [Plaintiff] to go into extreme defense mode" and to fight Beckwith, after which officers broke up the fight. (*Id.*; *see also* Pl.'s Opp'n to County Defs. 1.) Yet, Plaintiff fails to allege that the unidentified officers acted pursuant to any formal County policy, that they acted pursuant to an informal County custom or practice, that they were responsible for the promulgation of policies relevant to Plaintiff's claim, or that they failed to receive adequate training or supervision and, because of that failure, allowed the alleged constitutional deprivation to occur.

Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim against any Defendant, Plaintiff's claims against Orange County and Newburgh, as well as his claims against Torres and Moreno in their official capacities, are dismissed. *See Ward v. Coley*, No. 18-CV-2382, 2019 WL 977887, at *8 (S.D.N.Y. Feb. 28, 2019) (dismissing *Monell* claim where the plaintiff failed entirely to connect the individual defendants' actions to a municipal policy or custom); *McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (same).

### 3. Deliberate Indifference

Plaintiff claims that Defendants were deliberately indifferent to his safety while

incarcerated at Orange County Jail. (*See* SAC 3–6.) "[A]n inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect [the inmate] from the violent actions of other inmates may state a viable § 1983 cause of action." *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (citation omitted); *Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) ("Prison officials are liable . . . for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety." (citation omitted)).

Because Plaintiff was a pretrial detainee at the time of the allegations, (*see* generally SAC), his deliberate indifference claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). The Second Circuit recently held that deliberate indifference claims under the Fourteenth Amendment are analyzed somewhat differently than the same claims under the Eighth Amendment, which applies to inmates who have been convicted and sentenced. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To be sure, the overarching framework remains the same. Under both the Eighth and Fourteenth Amendments, to state a deliberate indifference claim an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendant "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (citation omitted).

The first element "is evaluated the same way." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30). This requirement is "objective": The inmate must show that the "the alleged deprivation" is "sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). In other words, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Blandon v.*

13

*Capra*, No. 17-CV-65, 2017 WL 5624276, at *7 (S.D.N.Y. Nov. 20, 2017) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). While the Eighth Amendment imposes a subjective standard — that the prison official "know[] of and disregard[] an excessive risk to inmate health or safety," *Darnell*, 849 F.3d at 32 (citation omitted) — the Fourteenth Amendment, applicable here, imposes an objective standard. That is, the prison official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. However, "[d]espite the slightly lower standard" applicable to pretrial detainees, "which is akin to objective recklessness, any § 1983 claim or a violation of due process requires proof of a *mens rea* greater than mere negligence." *Miller v. County of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (ultimately quoting *Darnell*, 849 F.3d at 36).

County Defendants argue that the Second Amended Complaint fails to state a deliberate indifference claim as to any Defendant. (*See* County Defs.' Mem. 7–9.) As to the objective element, Plaintiff alleges only that, when he arrived at the "medical waiting area," Beckwith "was present," thereby "causing [Plaintiff] to go into extreme defense mode" and leading to a fight between the two, which unnamed officers broke up. (SAC 5.) Plaintiff does not, however, allege that he suffered any injury as a result of the altercation. Indeed, Plaintiff provides almost no detail about the altercation at all; for example, Plaintiff does not even allege that Beckwith assaulted him, nor does he allege that any Defendant was present at the scene of the attack.

14

These conclusory allegations are insufficient to show that Plaintiff was incarcerated under a conditions presenting a "substantial risk of serious harm." *Hayes*, 84 F.3d at 620.

As to the mental-state element, Plaintiff nowhere alleges facts plausibly suggesting that any Defendant acted with "objective recklessness." *Miller*, 2108 WL 1597401, at *3 (ultimately quoting *Darnell*, 849 F.3d at 36). Plaintiff alleges only that, upon arriving at Orange County Jail, he told an unnamed officer "that the man who shot me is here," and that the officer told him not to worry and that "safety [is not] an issue." (SAC 5.) Yet, Plaintiff does not allege that he actually named Beckwith to the officer (or any Defendant). Nor does Plaintiff allege that any Defendant knew that Plaintiff had been given assurances regarding his safety. Finally, Plaintiff does not allege that any Defendant was present at the scene of Plaintiff's fight with Beckwith. Indeed, Plaintiff states that "all [he] can recall is" unnamed "officers yelling [to] br[eak] it up." (Pl.'s Opp'n to County Defs. 1.) These "conclusory allegations of [D]efendants' knowledge are insufficient." *Molina v. County of Westchester*, No. 16-CV-3421, 2017 WL 1609021, at *4 (S.D.N.Y. Apr. 28, 2017) (citation omitted). Moreover, Plaintiff alleges that the "unintentional and unfortunate encounter" with Beckwith "happened as a result of security *negligence* by the Orange County Jail administration." (SAC 5 (emphasis added).) Plaintiff reiterates that the "officers['] . . . negligence" violated his rights. (*Id.* at 6.) Yet, in addition to the fact that Plaintiff nowhere states *who* he was alleges was negligent, allegations of "mere negligence [do] not suffice" to make out a claim of deliberate indifference. *Hayes*, 84 F.3d at 620.

In sum, Plaintiff fails to plausibly allege either that he was "incarcerated under conditions posing a substantial risk of serious harm," *id.*, or that any Defendant acted with "objective recklessness" as to Plaintiff's safety, *Darnell*, 849 F.3d at 36. Accordingly, Plaintiff's Fourteenth Amendment deliberate indifference claim must fail.

####  4.  State-Law Claims

Plaintiff does not explicitly allege any state-law claim.  (*See generally* SAC.)  The Court need not, however, resolve at this time whether Plaintiff sufficiently states any state-law claim. Because the Court concludes that Plaintiff fails to state a § 1983 claim as to any Defendant, the Court declines at this time to exercise supplemental jurisdiction over any state-law claims that may be alleged.  *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008).

### III.  Conclusion

For the reasons stated above, County Defendants' and City of Newburgh's Motions To Dismiss are granted.

Plaintiff's claims against the City of Newburgh are dismissed *with* prejudice.  Even pro se plaintiffs are not entitled to amend a complaint if the complaint "contains substantive problems such that an amended pleading would be futile."  *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).  Because the Court has twice adjudicated Plaintiff's claims against the City of Newburgh, the Court finds that further amendment would be futile.  Accordingly, all claims against the City of Newburgh are dismissed with prejudice.

However, because this is the first adjudication of Plaintiff's claims against Orange County, Torres, and Moreno, Plaintiff's claims against these Defendants are dismissed *without* prejudice.  If Plaintiff wishes to file a third amended complaint as to these Defendants only, Plaintiff must do so within 30 days of the date of this Opinion.  Plaintiff should include within that third amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.  Plaintiff is advised that the third amended complaint will replace, not supplement, all prior complaints and filings.  The third amended complaint must

contain *all* of the claims and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 51, 73), and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 26, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE